J-S41043-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TERRENCE MICHAEL CLARK, | |
| Appellant | No. 1760 MDA 2014 |

Appeal from the Judgment of Sentence September 15, 2014
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0001674-2014

BEFORE:  ALLEN, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                         **FILED JULY 10, 2015**

Appellant, Terrence Michael Clark, appeals from the judgment of sentence imposed after his conviction, following a jury trial, of driving under the influence (DUI) (highest rate of alcohol), second offense.[1]  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> On February 22, 2014, at around 3:20 [a.m.], [West Manchester Township Police] Officer Keith Roehm observed two vehicles traveling at a high rate of speed down Route 30 in York County, Pennsylvania.  Officer Roehm pulled onto the roadway and proceeded to follow a white Ford pickup truck.  It took

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(c).  We note that the trial judge also convicted Appellant of DUI (general impairment) and exceeding maximum speed limits.  **See** 75 Pa.C.S.A. §§ 3802(a)(1) and 3362(a)(2).  These offenses are not the subject of the instant appeal.

Officer Roehm, going well over 100 mph, approximately one mile to catch up to the vehicle. Using a method called pacing mode, Officer Roehm was able to clock the truck at 91 mph in a posted 55 mph zone. As the truck approached a red light and began to slow down, Officer Roehm activated his emergency lights and initiated a traffic stop. The truck pulled over and Officer Roehm identified the driver as [] Appellant.

Officer Roehm approached the vehicle and engaged [] Appellant in conversation. He noted that [] Appellant had glassy/bloodshot eyes, slurred speech, and an odor of beer coming off his breath. . . . Based on his training and experience, Officer Roehm asked [] Appellant to exit the vehicle and perform some field sobriety tests. . . .

\* \* \*

Based on what Officer Roehm observed, he placed [] Appellant under arrest and transported him to York Hospital to have his blood drawn. Officer Roehm observed the nurse draw [] Appellant's blood using the standard NMS Laboratory kit. The records indicated that [] Appellant's blood was drawn at 4:05 [a.m.] The kit was then sent to NMS Labs in Willow Grove, Pennsylvania. The report Officer Roehm received from NMS Labs stated that [] Appellant's BAC [(blood alcohol content)] was 0.179%.

\* \* \*

[At trial, t]he last witness for the Commonwealth was Ayako Chan-Hosokawa. Ms. Hosokawa is a forensic toxicologist at NMS Labs in Willow Grove. She was admitted as an expert witness without objection. After explaining the standard NMS blood draw kit, Ms. Hosokawa explained how a person's BAC is determined. Ms. Hosokawa also testified about the procedures used to protect samples from contamination. She further explained that the blood is actually tested twice and those results have to be within 5% of each other. If those results do not match within the 5% window the blood is tested again. Using all of the above procedures, Ms. Hosokawa testified that [] Appellant's BAC was 0.179%[.]

Briefly on direct examination, Ms. Hosokawa explained that because of the volume of blood samples tested each day at her

lab, the samples are run in batches, or groups. On cross-examination, Ms. Hosokawa further explained that the lab runs 300 to 400 blood samples a day on the machine used to test [] Appellant's blood. Next, Ms. Hosokawa explained that a batch consists of four components: (1) a control containing up to ten samples (2) ten real samples submitted to the lab for testing (3) another control containing up to ten samples and (4) another ten real samples submitted for testing. In a particular batch, if the second control sample fails, that entire batch will be retested. Although Ms. Hosokawa testified that control samples do not fail often, she did state that a control sample failed four times on the day [] Appellant's blood was tested. However, on redirect Ms. Hosokawa did explain that the batch containing [] Appellant's sample was not affected by any of the failed control samples.

(Trial Court Opinion, 12/31/14, at 2-4) (record citations and quotation marks omitted).

On August 13, 2014, a jury convicted Appellant of DUI (highest rate of alcohol), second offense, and the trial judge convicted him of DUI (general impairment) and exceeding maximum speed limits, and immediately ordered a pre-sentence investigation report. On September 15, 2014, the court sentenced Appellant to an aggregate term of not less than fifteen months' nor more than five years' partial confinement consisting of seven months' on work release followed by eight months' house arrest. The court also ordered him to obtain a drug and alcohol evaluation; and attend an alcohol and safe driving clinic, and a driver improvement school.

On September 22, 2014, Appellant filed a post-sentence motion. The court denied Appellant's motion on September 25, 2014. Appellant timely appealed on October 16, 2014.[2]

Appellant raises the following question for our review:

Did the trial court abuse its discretion in finding the verdict was not against the weight of the evidence where the machine used to run Appellant's BAC had produced false batches?

(Appellant's Brief, at 4).[3]

Our standard of review is well-settled:

The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its

_____

[2] Pursuant to the court's order, Appellant filed a timely Rule 1925(b) statement on November 7, 2014. The court entered its Rule 1925(a) opinion on December 31, 2014. **See** Pa.R.A.P. 1925.

[3] We note that Appellant withdrew his claim of insufficient evidence. (**See** Appellant's Brief, at 4 n.1).

discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Ferguson***, 107 A.3d 206, 212-13 (Pa. Super. 2015) (citation omitted).

Here, Appellant argues that "the trial court abused its discretion in ruling on the weight of the evidence claim by relying on the fact that Appellant's batch was not a part of the four failed batches." (Appellant's Brief, at 10). Specifically, he claims "there is no way to tell if the machine was working properly considering the high number of failures which occurred in a single day." (***Id.***). We disagree.

We note that, "the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Ferguson***, ***supra*** at 213 (citation and internal quotation marks omitted).

Moreover, our independent review of the record reflects that Appellant's blood sample was not in any of the four failed batches. (***See*** N.T. Trial, 8/13/14, at 106-07). Additionally, there was no evidence that the machine was flawed rendering invalid results. (***See id.*** at 101-07).

Accordingly, we discern no abuse of discretion in the trial court's determination that the jury's verdict did not shock one's sense of justice. ***See Ferguson***, ***supra*** at 212-13.  Therefore, Appellant's issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2015